**Michael Lee HILL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 347–90.**

Court of Criminal Appeals of Texas, En Banc.

Jan. 8, 1992.

Rehearing Denied April 15, 1992.

Lawrence G. Boyd, Dallas, for appellant.

John Vance, Dist. Atty., and Jeffrey Brian Keck, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

MALONEY, Judge.

Michael Lee Hill, appellant herein, was convicted by a jury of aggravated robbery. V.T.C.A., Penal Code, Section 29.03. He was sentenced by the trial court to confinement for sixty years in the Texas Department of Criminal Justice, Institutional Division. Appellant appealed to the Court of Appeals alleging that the trial court erred in denying his claim that the State violated the rule of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and article 35.261 of the Texas Code of Criminal Procedure, by exercising a peremptory challenge against a black venireman in a racially discriminatory manner. The Court of Appeals reversed the conviction on the basis of appellant's claim. *Hill v. State*, 787 S.W.2d 74 (Tex.App.—Dallas 1990).

The State filed a petition for discretionary review raising three grounds: (1) appellant's claim was not timely; (2) appellant did not establish a prima facie case of purposeful discrimination; and (3) the Court of Appeals applied the wrong appellate standard of review in determining the correctness of the trial court's finding that the prosecutor provided a race-neutral explanation for striking a prospective juror. We granted the State's petition on all three grounds. We will affirm.

In *Batson*, the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution "forbids the

prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable to impartially consider the State's case against a black defendant." *Batson*, 476 U.S. at 89, 106 S.Ct. at 1719.

In this case, there were five African-Americans on the venire. Two of the five were at the end of the panel and, thus, were not reached. Of the remaining three, two women sat on the jury and one male was peremptorily challenged by the prosecutor. When the appellant objected to the exclusion of the black male on the basis of *Batson* and article 35.261 of the Texas Code of Criminal Procedure, (V.A.C.C.P.), the prosecutor responded that he challenged the venireman "because I felt like he would identify with the defendant. He's black, he's male, and I didn't like the way he responded to my questions." The trial court overruled appellant's objection. The Court of Appeals reversed, holding that the prosecutor violated the equal protection clause of the United States Constitution and also violated article 35.261, V.A.C.C.P., by exercising a peremptory challenge against a black venireman on the basis of his race.

### I.

### WAS APPELLANT'S CLAIM UNDER ART. 35.261, V.A.C.C.P. TIMELY?

▪ Appellant voiced his objection after the venire was discharged but before the jury was sworn. The State alleges that appellant's claim should be dismissed as untimely under the authority of *Henry v. State*, 729 S.W.2d 732, 737 (Tex.Cr.App. 1987), where this Court held that a *Batson* objection must be made "after the composition of the jury is made known but before the jury is sworn and the venire panel is discharged."[1] Subsequent to the *Henry* decision, however, the legislature enacted article 35.261, specifying that a *Batson* ob-

---

1. We note that although the State failed to object to the timeliness of defendant's motion in the trial court, the State is not precluded from raising it on appeal. *Cooper v. State*, 791 S.W.2d 80 (Tex.Cr.App.1990) (opinion on State's motion for rehearing).

jection can be timely interposed "[a]fter the parties have delivered their lists [of peremptory challenges] ... and before the court has impanelled the jury." Art. 35.-261(a), V.A.C.C.P. Both *Henry* and article 35.261(a) require that the objection be made before the jury is impanelled, but only *Henry* requires that it also be made before the venire panel is discharged. Appellant contends that the time requirements of article 35.261 govern, not those set out in *Henry*. We agree with appellant.

In *Batson,* the Supreme Court did not specify the procedural mechanism for a *Batson*-based objection, explaining that

[i]n light of the variety of jury selection practices followed in our state and federal trial courts, we make no attempt to instruct these courts how best to implement our holding today. For the same reason, we express no view on whether it is more appropriate in a particular case, upon a finding of discrimination ... for the trial court to discharge the venire and select a new jury from a panel not previously associated with the case ... or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire. [citations omitted].

*Batson,* 476 U.S. at 100 n. 24, 106 S.Ct. at 1725, n. 24.

■ To codify and implement *Batson* in Texas, the legislature enacted article 35.-261, V.A.C.C.P. *Oliver v. State,* 808 S.W.2d 492 (Tex.Cr.App.1991); *Carrion v. State,* 802 S.W.2d 83, 87–88 (Tex.App.—Austin 1990). We have held that article 35.261 was "intended to create uniform procedures and remedies to address claimed constitutional violations during jury selection." *Oliver,* at 496. Therefore, whenever a claim is made that veniremembers were peremptorily challenged on the basis of their race, article 35.261 must be followed.

Article 35.261, V.A.C.C.P., provides:

(a) After the parties have delivered their lists [of peremptory challenges] to the clerk ... and before the court has impan-

elled the jury, the defendant may request the court to dismiss the array and call a new array in the case. The court shall grant the motion of a defendant for dismissal of the array if the court determines that the defendant is a member of an identifiable racial group, that the attorney representing the state exercised peremptory challenges for the purpose of excluding persons from the jury on the basis of their race, and that the defendant has offered evidence of relevant facts that tend to show that challenges made by the attorney representing the state were made for reasons based on race. If the defendant establishes a prima facie case, the burden then shifts to the attorney representing the state to give a racially neutral explanation for the challenges. The burden of persuasion remains with the defendant to establish purposeful discrimination.

(b) If the court determines that the attorney representing the state challenged prospective jurors on the basis of race, the court shall call a new array in the case.

The Court of Appeals held that, in light of the express provisions of article 35.261, *Henry,* "no longer governs the timeliness of a challenge." *Hill,* 787 S.W.2d at 76.

In *Henry,* 729 S.W.2d at 737, this Court pointed out that requiring the objection to be made before the jury is sworn and the panel is discharged allows the trial court the option of remedying the violation by either installing the challenged veniremember to the jury or discharging the jury and calling a new array. It was also suggested in *Henry* that when and if a remedy is eradicated, the accompanying timeliness requirements should be modified.

We have examined the legislative history of Texas House Bill 65 and Texas Senate Bill 345, 70th Legislature, and find that in enacting article 35.261, the legislature considered both of the possible remedies suggested in *Henry* and held numerous hearings and debates to determine which remedy was best. Ultimately, they elected to

have the sole remedy be the call of a new array. This remedy was chosen to eliminate any possible bias toward the State which might exist if the remedy were to seat a venireman whom the State had just struck. The Senate countered House Bill 65, requiring the impanelment of a new array as a remedy, with Senate Bill 345 which would leave it to the trial court's discretion to either call a new array or reseat the improperly struck venireman. *See* Senate Committee on Criminal Justice Debate of Senate Bill 345, February 21, 1989. This bill was defeated and the original House version (House Bill 65) became article 35.261. Thus, the legislature clearly rejected the requirement that the objection be made before the venire is discharged. Art. 35.261(b), V.A.C.C.P.

■ As we noted in *Henry*, when the only possible remedy is the call of a new array, the objection to the strike need not be lodged before the venire is discharged since the venire will no longer be needed whether the objection is sustained or not.[2] When the legislature speaks to an issue subsequent to this or any other court's decision on the issue, and the effect of the legislation is to modify existing caselaw, the statute shall control unless it is unconstitutional.[3]

The State alleges that this Court has already interpreted article 35.261 to include the *Henry* time limits and that, since the legislature has not acted to amend the statute to specifically exclude those time requirements, we should continue to apply them.[4] The State relies on this Court's decisions in *Brown v. State*, 769 S.W.2d 565 (Tex.Cr.App.1989) and *Cooper v. State*, 791 S.W.2d 80 (Tex.Cr.App.1990). But these cases do not support the State's argument. *Brown's* trial occurred prior to the effective date of article 35.261 and, therefore, *Henry* was applicable to his trial. Although *Cooper's* trial did occur after the effective date of article 35.261, we noted that the statute was "not mentioned by the parties or the Court of Appeals." *Cooper*, 791 S.W.2d at 81. Thus, we were not called upon to interpret the effect of article 35.261 in that case.

We now hold that *Henry* is inapplicable to the timeliness of any equal protection claim arising from the racially discriminatory exercise of a peremptory challenge after the effective date of article 35.261. Since appellant's trial occurred after the effective date of article 35.261, the provisions of article 35.261 apply. For the objection to be timely it must have been raised "[a]fter the parties ... delivered their lists ... and before the court ... impanelled the jury". Art. 35.261(a), V.A.C.C.P. A jury is considered "impanelled" when the members of the jury have been both selected and sworn. *Price v. State*, 782 S.W.2d 266 (Tex.App.—Beaumont 1989). *See also*, *Woolls v. State*, 665 S.W.2d 455 (Tex.Cr. App.1983); *Reese v. State*, 151 S.W.2d 828 (Tex.Cr.App.1941).

■ Here, appellant lodged his objection after the peremptory strike list had been delivered and the stricken veniremembers

---

2. We note that in *Sims v. State*, 792 S.W.2d 81 (Tex.Cr.App.1990), this Court held that, although the case was tried after the effective date of article 35.261, we would not address the issue of "whether the Court of Appeals erred in concluding that reinstatement of an improperly excluded venireman to the jury is a permissible remedy under, or in spite of, Article 35.261(b)." *Id.* at 81. Since the defendant in *Sims* had requested at trial that either the juror be reinstated or a new array be called, and had not challenged the Court of Appeals' holding that he invited the error, we were not adequately presented with the issue of whether article 35.261 required that the only remedy be the call of a new array.

Because the issue was not presented we dismissed the petition for discretionary review as being improvidently granted.

3. "It is within a legislature's competence to wipe the slate clean of a judicial precedent regarded as undesirable." Keeton, Venturing To Do Justice (Cambridge, Mass.: Harvard University Press, 1969), pp. 95–96.

4. Appellant noted that there was an attempt made in the 71st legislature to amend article 35.261, V.A.C.C.P. to include the *Henry* limits, but it failed. Clearly, if the legislature had intended to include those limits it would have done so.

excused, but before the jury was sworn. As the Court of Appeals correctly held, appellant met the requirements of article 35.261(a) and, therefore, his objection was timely.

## II.

### WAS THERE A PRIMA FACIE SHOWING OF RACIAL DISCRIMINATION?

In its second ground for review the State alleges that the Court of Appeals erred in holding that appellant made a prima facie showing of racial discrimination.

■ The United States Supreme Court recently held that where a prosecutor has articulated the reasons for his allegedly racially discriminatory peremptory challenges "without any prompting or inquiry from the trial court" and "the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez v. New York*, — U.S. —, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991). Likewise, this Court has noted that "[a]ppellate review should not become bogged down on the question of whether the defendant has made out a prima facie case [unless the ruling on the prima facie case] stop[s] the fact finding process." *Dewberry v. State*, 776 S.W.2d 589, 591 (Tex.Cr. App.1989) [citing *U.S. v. Forbes*, 816 F.2d 1006, 1010 (5th Cir.1987)].[5] Thus, the policy of this Court, like that of the United States Supreme Court, is that we will not review the issue of whether the defendant established a prima facie case where the prosecutor has articulated his reasons for the challenged peremptory strike and the trial court has ruled on the ultimate question of intentional discrimination.

In this case the prosecutor articulated all of his reasons for the exercise of his chal-

lenged peremptory strike, appellant cross-examined him, and the trial judge entered his finding. Whether the appellant established a prima facie case is a moot issue.

## III.

### THE STANDARD FOR REVIEW

■ In its third ground for review the State contends that the Court of Appeals erred by applying an incorrect standard of appellate review. The State asserts that the correct standard of review is "clearly erroneous" and cites as authority *Hernandez v. New York*, — U.S. —, 111 S.Ct. 1859, 1871, 114 L.Ed.2d 395 (1991) ("[W]e decline to overturn the state [trial] court's finding on the issue of discriminatory intent unless convinced that its determination was clearly erroneous.").

We have held that the correct standard of review for claims that peremptory strikes were used in a racially discriminatory manner is "clearly erroneous". *Williams v. State*, 804 S.W.2d 95, 101 (Tex. Cr.App.1991); *Tennard v. State*, 802 S.W.2d 678 (Tex.Cr.App.1990); *Whitsey v. State*, 796 S.W.2d 707, 726 (Tex.Cr.App. 1989) (opinion on State's motion for rehearing). To determine whether the factfinder's decision is "clearly erroneous", appellate courts look to the record to see if they are "left with the 'definite and firm conviction that a mistake has been committed'." *U.S. v. Hernandez*, 887 F.2d 564, 567 (5th Cir.1989); (citing and quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)).

In this case, the Court of Appeals "consider[ed] the evidence in the light most favorable to the trial judge's rulings and determine[d] if those rulings [were] supported by the record." *Hill*, 787 S.W.2d 74 at 77. In so doing, the Court of Appeals relied upon our decision in *Keeton v. State*,

---

**5.** In *Salazar v. State*, 795 S.W.2d 187 (Tex.Cr. App.1990), this Court addressed the issue of whether a prima facie case had been established

because the Court of Appeals had ended the inquiry into the defendant's claim by concluding that it had not been.

749 S.W.2d 861, 870 (Tex.Cr.App.1988), modified by *Whitsey v. State,* 796 S.W.2d 707 (Tex.Cr.App.1989) (opinion on State's motion for rehearing).

We have held that although "clearly erroneous" is the correct appellate standard of review, "supported by the record," the appellate standard we announced in *Keeton,* was analytically and intellectually the same as "clearly erroneous". *Whitsey,* at 722–724 ("adopting the clearly erroneous standard ... merely extend[s] the 'supported by the record' standard to its ultimate and logical conclusion"); *Williams,* 804 S.W.2d 95.

Since the standard utilized by the Court of Appeals is the functional equivalent of the "clearly erroneous" standard, we cannot say that the Court of Appeals' approach was incorrect. However, we disavow the nomenclature which the Court of Appeals used in its appellate review.

### IV.

### DID APPELLANT PROVE RACIAL DISCRIMINATION?

After appellant made his objection to the prosecutor's peremptory challenge, the prosecutor testified before the court that he challenged the venireman "because I felt like he would identify with the defendant. He's black, he's male, and I didn't like the way he responded to my questions."

The State contends that the Court of Appeals' decision effectively creates the rule that, if a prosecutor states that the venireman's race influenced his decision to peremptorily challenge the venireman, the defendant has conclusively proven racial discrimination. But the Court of Appeals wrote,

we must examine each of the prosecutor's reasons for striking a black potential juror within the circumstances of the particular case to determine whether the "neutral explanation" for the strike is really a pretext for a racially motivated

peremptory challenge.... We determine that the reasons given by the prosecutor for challenging [the venireman] were unrelated to the case and based on assumptions.

*Hill* at 78–79.

■ The State urges that the Court of Appeals should have accepted the prosecutor's reason for the strike: Identity between the venireman and the appellant. The State contends that identification between the venireman and appellant can be a legitimate race-neutral reason for the exercise of a peremptory challenge against the venireman, even if one of the factors relied upon to establish the identity is shared race, so long as there are other nonracial factors which also establish identity. In support of its contention, the State relies on *Lee v. State,* 747 S.W.2d 57 (Tex.App.— Houston [1st] 1988) (pet. ref'd.). In that case the First Court of Appeals held that the prosecutor's announced reason for the challenge, identity between the venireman and appellant, based on the fact that they were both black males and were only ten years apart in age, was a sufficiently race-neutral reason for the strike. The Court of Appeals wrote, "[a] venireman who is similar in age and might be sympathetic for a defendant can be justifiably excluded from the jury panel." *Id.* at 59. We agree that race may be a factor coexisting with a nonracial reason for a strike, however, race may *not* be the reason for the strike.

Since 1880 the United States Supreme Court has interpreted the Equal Protection Clause of the Fourteenth Amendment to apply to jury selection, both grand and petit. *Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1880) (holding a West Virginia statute which prohibited black citizens from serving on grand juries violative of equal protection). The Supreme Court held in *Strauder* that the Fourteenth Amendment mandates that "the law in the States shall be the same for the black as for the white; that all persons ... shall stand equal before the laws of the States and, ... that no discrimination shall be

made against them by law because of their color[.]" *Strauder* at 307, 25 L.Ed. 665. But it wasn't until 1965 that the Supreme Court addressed a claim that equal protection had been denied to a criminal defendant by a prosecutor's use of peremptory strikes. *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

In *Swain,* the Court first noted the great role that peremptories play in our system of jurisprudence, and realized that their very purpose is to eliminate prospective jurors for reasons which may be based on feelings, rather than logic. *See Id.* at 220, 85 S.Ct. at 836 ("[Peremptory challenges are] exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliations of people summoned for jury duty."). The Court then acknowledged that it was possible that prosecutors could use peremptories to discriminate against black citizens, but required, in order for an equal protection claim to be established, proof of more than just the fact that the State exercised peremptory challenges against all the black citizens on one venire. The Court held that "[t]he presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court." [6] *Id.* at 222, 85 S.Ct. at 837. However, the Court also acknowledged that it was possible that the "proof might support a reasonable inference that [black citizens were] excluded from juries for reasons *wholly unrelated to the outcome of the particular case on trial* and that the peremptory system [was] being used to *deny [black citizens] the same right and opportunity to participate in the administration of justice enjoyed by the white population.*" *Id.* at 224, 85 S.Ct. at 838 (emphasis added). If that were the case, the Court would then recognize an Equal Protection claim. Thus, in order to prove a violation of Equal Protection, a criminal defendant was required to show a pattern of invidious discrimination in not just his case, but several cases.

In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Court was asked to "reexamine that portion of *Swain* ... concerning the evidentiary burden placed on a criminal defendant who claims that he has been denied equal protection through the State's use of peremptory challenges to exclude members of his race from the petit jury." *Id.* at 82, 106 S.Ct. at 1715. In addressing this issue the Court reviewed the history of the Equal Protection Clause.

The Court in *Batson* explained that "the purpose of the Fourteenth Amendment was to put an end to governmental discrimination on account of race." *Id.* at 85–86, 106 S.Ct. at 1716–1717. "Discrimination within the judicial system is most pernicious because it is 'a stimulant to that race prejudice which is an impediment to securing to [black citizens] that equal justice which the law aims to secure to all others." *Id.* at 88, 106 S.Ct. at 1718 (quoting *Strauder* 100 U.S. at 308).

Quoting *Swain* 380 U.S. at 224, 85 S.Ct. at 838, the Supreme Court explained that the Equal Protection Clause makes it "impermissible for a prosecutor to use his challenges to exclude blacks from the jury 'for reasons wholly unrelated to the outcome of the particular case on trial' or to deny to blacks 'the same right and opportunity to participate in the administration of justice enjoyed by the white population'" *Batson* 476 U.S. at 91, 106 S.Ct. at 1720. Further, the Court stated, "our cases concerning selection of the venire reflect the general Equal Protection principle that the 'invidious quality' of governmental action claimed to be racially discriminatory 'must ultimately be traced to a racially discriminatory purpose'". *Id.* at 93, 106 S.Ct. at 1721 (quoting *Washington v. Davis,* 426 U.S. 229, 240, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597 (1976)).

**6.** The Constitution guarantees "freedom from any bias against the accused ... [and] any prejudice against his prosecution. Between him and the state the scales are to be evenly held." *Hayes v. Missouri,* 120 U.S. 68, 71, 7 S.Ct. 350, 351, 30 L.Ed. 578, 580 (1887).

■ The overriding intent of the Equal Protection Clause, as interpreted by the Supreme Court and applied to peremptory challenges, is to protect African–Americans from discrimination against them because they are African–Americans, and to guarantee them the same rights as are enjoyed by other citizens.

The Supreme Court in *Batson* made it easier for a criminal defendant to prove that a prosecutor used peremptory challenges in violation of the Fourteenth Amendment than it had been under *Swain.* The Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson,* 476 U.S. at 89, 106 S.Ct. at 1719. "Of course, counsel's effort to obtain possibly relevant information about prospective jurors is to be distinguished from the practice at issue here." *Id.* at 89, n. 12, 106 S.Ct. at 1719, n. 12.

Recently, the Supreme Court recognized and held that the Fourteenth Amendment protects every race against purely racially-motivated exercises of peremptory challenges. *Powers v. Ohio,* —— U.S. ——, 111 S.Ct. 1364, 1373–1374, 113 L.Ed.2d 411 (1991). Additionally, the Supreme Court has declared that the Equal Protection clause as applied to peremptory challenges also protects prospective jurors in civil trials. *Edmonson v. Leesville Concrete Co.,* —— U.S. ——, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).

■ The Fourteenth Amendment mandates that all United States citizens called for jury duty shall be treated alike under the law. If a member of any race is struck "for reasons wholly unrelated to the outcome of the particular case on trial or in order to deny to [him/her] the same right and opportunity to participate in the administration of justice enjoyed by [others]" then the Equal Protection clause has been violated. Conversely, if a venireman is struck for reasons related to the case being tried and he would have been struck for that reason regardless of his race, the mere mention of the fact that the venireman is of a particular race does not automatically establish a *Batson* claim.[7]

■ The Equal Protection clause is designed to protect all citizens from being discriminated against because of their race. It does not protect them from a peremptory challenge levelled against them because of the prosecutor's reasonable belief that they can not be sufficiently impartial in the particular case on which they would sit as a juror. Unless racial discrimination against a venireman is established by the party raising the claim, the Equal Protection Clause is not implicated. Although courts must be cautious in their determination of the prosecutor's intent for the strike when he mentions race, we can conceive of scenarios in which the race of the venireman could be related to the particular case to be tried in such a way as to create a biased jury if race were not considered by the litigants in exercising their peremptory strikes.[8] This case does not present such a scenario.

The State alleges that there was "identity" between the venireman and appellant, however, the only evidence of similarity between the venireman and appellant was that they were both black males. The prosecutor did not articulate any other similarity.

---

7. Unlike the concurring opinion, which makes a strong argument for the eradication of the peremptory challenge altogether, which decision rightly belongs in the Legislature, we do not believe that there are magic words which automatically establish a *Batson* claim.

8. In *Turner v. Murray,* 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986), the Supreme Court held that "a capital defendant accused of an interracial crime is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias." Since this holding was handed down on the same day as *Batson,* the Court did not mean to exclude this sort of bias from the State's consideration at voir dire. *See also Ham v. South Carolina,* 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973).

*Batson* specifically provides that a "prosecutor may not rebut the defendant's prima facie case of discrimination [based upon the prosecutor's use of peremptory challenges] by stating merely that he challenged jurors of the defendant's race on the assumption—or his intuitive judgment—that they would be partial to the defendant because of their shared race." *Batson,* 476 U.S. at 98, 106 S.Ct. at 1724. "[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson,* at 89, 106 S.Ct. at 1719.

■ Thus the alleged identity between the venireman and appellant, based only on the shared sex and shared race of the venireman and appellant, does not escape *Batson's* prohibition against making the assumption that because the defendant and the venireman are of the same race they would identify with each other. If there were other significant similarities between appellant and the venireman, then race might have been one of those similarities which established empathy between appellant and the venireman. The Court of Appeals is correct in holding that this is not sufficient to establish a constitutional, non-race based identity. Insofar as the language of *Lee v. State,* 747 S.W.2d 57, conflicts with this opinion it is expressly disavowed.

■ The fact that the prosecutor mentioned race as part of his explanation for his peremptory challenge to establish an identity which is not present is indicative of purposeful discrimination in this case, but it is not conclusive. Appellant still must prove racial discrimination. Art. 35.261(a), V.A.C.C.P. In other words, appellant must show that the prosecutor's other explanations for his challenge were merely a pretext for discrimination. *See Whitsey v. State,* 796 S.W.2d 707, 726 (Tex.Cr.App. 1989) (opinion on State's motion for rehearing).

■ As the Court of Appeals found, the prosecutor stated that he challenged the venireman "because I felt like he would identify with the defendant. He's black, he's male, and I didn't like the way he responded to my questions." *Hill,* at 78. After examining the prosecutor's voir dire of the venireman in its entirety, the Court of Appeals found that it was perfunctory: "there were no meaningful questions asked upon which to challenge a juror." *Id.*

The exchange between the prosecutor and the black venireman who was subsequently struck and about whom the appellee raised his *Batson* claim, consisted of the following:

Prosecutor: Is that [venireman's last name]? Is that right, sir?

Venireman: Uh-huh.

Prosecutor: What do you do for AT & T?

Venireman: I'm a data tech—

Prosecutor: Pardon me?

Venireman: A data technician.

Prosecutor: A data technician? How long—I can barely read that. How long have you been with that company?

Venireman: Twenty years.

Prosecutor: Can you think of any reason why you would not be fair and impartial in this particular case?

Venireman: No.

Prosecutor: Okay.

We agree that the State's voir dire examination of this venireman was perfunctory. We must examine the rest of the prosecutor's reasons for this strike in light of his perfunctory voir dire. *See Whitsey,* 796 S.W.2d at 713. The prosecutor's additional reasons were: "[I] didn't like the way he [the venireman] responded to my questions ... his attitude, his demeanor."

The only other statements made by the venireman were made in response to appellant's questions. When asked by appellant's counsel about his prior contact with criminal activity, the venireman responded

that his coworker had been robbed. He stated, however, that knowing the facts of his friend's case would not bias him in any way. When asked if he could give the defendant the benefit of "your individual judgment?" he answered, "without a doubt."

As can be seen from the reproduction of the voir dire, above, there is nothing to suggest that the venireman was hostile to the State. Illustrative of this point, when asked what answers the venireman gave that he didn't like, the prosecutor answered, "I'll have to have them read back to me. I can't remember what they were." Because the prosecutor never mentioned any specific body language, or any other non-verbal actions which led him to believe that the venireman was biased against his case, the record speaks for itself.

Appellant has carried his burden; the prosecutor's race-neutral reasons for the exercise of his strike were pretextual. The trial court's finding that the peremptory challenge was exercised for race-neutral reasons is clearly erroneous. The judgment of the Court of Appeals is affirmed. This cause is remanded to the trial court.

MILLER, J., concurs in result.

BAIRD, Judge, concurring.

I concur with the result reached by the majority; the judgment of the Court of Appeals should be affirmed. However, I write separately to address Part IV. of the majority opinion.

## I. THE MAJORITY'S HOLDING

The majority phrases the State's contentions as follows: "The State contends that the Court of Appeals' decision effectively creates the rule that, if a prosecutor states that the venireman's race influenced his decision to peremptorily challenge the venireman, the defendant has conclusively proven racial discrimination." At 866.

"The State contends that identification between the venireman and appellant can be a legitimate race-neutral reason for the exercise of a peremptory challenge against the venireman, even if one of the factors relied upon to establish the identity is shared race, so long as there are other non-racial factors which also established identity." At 866. The majority embraces the State's contentions by holding: "The fact that the prosecutor mentioned race as a part of his explanation for his peremptory challenge to establish an identity which is not present is indicative of purposeful discrimination in this case, *but is not conclusive*.[1] ... [A]ppellant must show that the prosecutor's other explanations for his challenge were merely a pretext for discrimination." At 869.

## II. A VIEW FROM THE UNITED STATES SUPREME COURT

The right of a citizen to participate in the administration of justice by serving on a petit jury is a very precious right in our society, second only to a citizen's right to participate in our society, second only to a citizen's right to participate in our democratic system by voting. *Powers v. Ohio,* —— U.S. ——, 111 S.Ct. 1364, 1369, 113 L.Ed.2d 411 (1991).

In *Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1880), the defendant, a "colored man," complained of the State law which provided that no colored man was eligible to be a member of a grand jury or to serve on a petit jury. The controlling question presented in *Strauder* was:

whether by the Constitution and laws of the United States, every citizen of the United States has a right to a trial of an indictment against him by a jury selected and impaneled without discrimination against his race or color, because of race or color[.]

It is to be observed that [the question] is not whether a colored man, when an

1. Unless otherwise indicated, all emphasis herein is supplied by the author.

indictment has been preferred against him, has a right to a grand or a petit jury composed in whole or in part of persons of his own race or color; but it is whether, in the composition or selection of jurors by whom he is to be indicted or tried, all persons of his race or color may be excluded by law, solely because of their race or color, so that by no possibility can any colored man sit upon the jury.

*Id.* at 305.

The Supreme Court deemed the question important because it demanded a construction of the "recent [13th, 14th and 15th] amendments of the Constitution." *Id.* The Court recognized that the 14th Amendment was "designed to assure to the colored race the enjoyment of all the civil rights that under the law are enjoyed by white persons[.]" *Id.* at 306. Under the Court's construction the "recent amendments" were ratified to provide "the right to exemption from unfriendly legislation against them distinctively as colored; exemption from legal discriminations, implying inferiority in civil society, lessening the security of their enjoyment of the rights which others enjoy, and discriminations which are steps towards reducing them to the condition of a subject race." *Id.* at 308.

When specifically addressing the statute of which the defendant complained the Court stated:

The very fact that colored people are singled out and expressly denied by a statute all right to participate in the administration of the law, as jurors, because of their color, though they are citizens and may be in other respects fully qualified, is practically a brand upon them, affixed by the law; an assertion of their inferiority, and a stimulant to that race prejudice which is an impediment to securing to individuals of the race that equal justice which the law aims to secure to all others.

*Id.* at 308.

The Court concluded that the West Virginia statute's discrimination in the selection of jurors amounted to a denial of equal protection and was, therefore, unconstitutional. *Id.* at 310.

In *Carter v. Texas*, 177 U.S. 442, 444, 20 S.Ct. 687, 688, 44 L.Ed. 839 (1900), a Galveston County defendant filed a motion to quash his indictment because the grand jury commissioners, who appointed the grand jury, excluded "all colored persons or persons of African descent" because of their race and color. The trial court overruled the motion. The defendant was convicted and sentenced to death. On appeal the defendant did not contend that the law was facially unconstitutional but rather that it was being administered in a discriminatory fashion by the grand jury commissioners who were selecting only whites as grand jurors. Nevertheless, this Court affirmed the judgment of the trial court. *See, Carter v. State*, 39 Tex.Crim. 345, 46 S.W. 236; 39 Tex.Crim. 345, 48 S.W. 508 (Tex.Cr.App.1898) (Appellant's mtn. for reh'g overruled).

In 1890, when the Supreme Court reviewed our *Carter* decision the rules of law which governed the case were already "clearly established" by Supreme Court precedent. *Carter*, 20 S.Ct. at 689.

Whenever by any action of a state, whether through its legislature, through its courts, or through its executive or administrative officers, all persons of the African race are excluded, solely because of their race or color, from serving as grand jurors in the criminal prosecution of a person of the African race, the equal protection of the laws is denied to him, contrary to the Fourteenth Amendment of the Constitution of the United States. *Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664; *Neal v. Delaware*, 103 U.S. 370, 397, 26 L.Ed. 567, 574; *Gibson v. Mississippi*, 162 U.S. 565, 40 L.Ed. 1075, 16 Sup.Ct.Rep. 904.

*Id.* at 689.

The Supreme Court found: "The necessary conclusion is that the defendant has been denied a right duly set up and claimed

by him under the Constitution and laws of the United States; and therefore *the judgment is reversed ...*" *Id.* at 690 (Emphasis in original).

In spite of the decision in *Carter,* fifty years later, the Supreme Court was asked to review the Harris County practice of selecting individuals for grand jury service. In *Smith v. Texas,* 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940), the defendant complained of the intentional and systematic exclusion of "negroes" from grand jury service. The defendant's timely filed motion to quash the indictment was denied by the trial court and that decision was affirmed by this Court. *See, Smith v. State,* 140 Tex.Crim. 565, 136 S.W.2d 842 (App. 1940). The Texas statutory scheme was capable of being carried out with no racial discrimination. However, because of the wide discretion permissible under the statute it was equally capable of being applied in a discriminatory manner. In *Smith,* two grand jury commissioners testified that "their failure to select negroes was because they did not know the names of any who were qualified and the other said that he was not personally acquainted with any members of the negro race." *Smith,* 61 S.Ct. at 166. In reversing the defendant's conviction the Supreme Court held:

It is part of the established tradition in the use of juries as instruments of public justice that the jury be a body truly representative of the community. For racial discrimination to result in the exclusion from jury service of otherwise qualified groups not only violates our Constitution and the laws enacted under it but is at war with our basic concepts of a democratic society and a representative government.

*Id.* at 165.

In *Cassell v. Texas,* 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950), the defendant attacked the way the statutory method of grand jury selection had been administered by the grand jury commissioners of Dallas County. The defendant contended the commissioners were limiting the number of "Negroes selected for grand-jury service to not more than one on each grand jury." *Cassell,* 70 S.Ct. at 631. The Supreme Court held:

Jurymen should be selected as individuals, on the basis of individual qualifications, and not as members of a race.

*An accused is entitled to have charges against him considered by a jury in the selection of which there has been neither inclusion nor exclusion because of race.*

*Id.*

Holding that a proportional racial limitation was forbidden under the 14th Amendment, *Id.* at 632, the Supreme Court again reversed a judgment of this Court. *See, Cassell v. State,* 154 Tex.Crim. 648, 216 S.W.2d 813 (App.1949).

In *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) the Supreme Court confronted for the first time the use of peremptory challenges as a device to exclude jurors because of their race. The Court re-stated the principle that "a State's purposeful or deliberate denial to Negroes on account of race of participation as jurors in the administration of justice violates the Equal Protection Clause." *Swain,* 85 S.Ct. at 826.

The question of whether a defendant had met the *Swain* burden of proving purposeful discrimination was re-visited in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The *Batson* court recognized that while many of the earlier decisions by the Supreme Court had "been concerned largely with discrimination during selection of the venire, the principles announced there also forbid discrimination on account of race in selection of the petit jury." *Batson,* 106 S.Ct. at 1718. Accordingly, "the State may not draw up its jury lists pursuant to neutral procedures but then resort to discrimination at 'other stages in the selection process.'" *Id.,* quoting *Avery v. Georgia,* 345 U.S. 559, 562, 73 S.Ct. 891, 893, 97 L.Ed. 1244 (1953). Therefore, "the State's privilege to strike

individual jurors through peremptory challenges, is subject to the commands of the Equal Protection Clause." *Batson*, 106 S.Ct. at 1719.

The *Batson* Court described *Swain* as having placed on defendants a crippling burden of proof which had the effect of immunizing prosecutors from constitutional scrutiny. *Id.* at 1721. Consequently, the *Batson* Court relaxed the *Swain* burden. *Id.* at 1723. After establishing a prima facie case of purposeful discrimination in the selection of the petit jury, the burden shifts to the State to come forward with a "neutral explanation" for challenging black jurors. *Id.* at 1723. When describing the State's burden the Supreme Court held in part:

> ... Just as the Equal Protection Clause forbids the States to exclude black persons from the venire on the assumption that blacks as a group are unqualified to serve as jurors, [citation omitted] so it *forbids the States to strike black veniremen on the assumption that they will be biased in a particular case simply because the defendant is black. The core guarantee of equal protection, ensuring citizens that their State will not discriminate on account of race, would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions, which arise solely from the jurors' race.* Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or 'affirm[ing] [his] good faith in making individual selections.' [citation omitted] If these general assertions were accepted as rebutting a defendant's prima facie case, the Equal Protection Clause 'would be but a vain and illusory requirement.' [citation omitted] *The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried.*

*Id.* at 1723.

In *Powers v. Ohio*, — U.S. —, 111 S.Ct. 1364, 1366, 113 L.Ed.2d 411 (1991), the Supreme Court reaffirmed the premise "that racial discrimination in the qualification or selection of jurors offends the dignity of persons and the integrity of the courts." The *Powers* court extended the holding in *Batson* and held that "a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race." *Id.* Relevant to the issue presented in the case at bar the *Powers* Court held:

> We hold that the Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race, a practice that forecloses a significant opportunity to participate in civic life. *An individual juror does not have a right to sit on any particular petit jury, but he or she does possess the right not to be excluded from one on account of race.*
>
> It is suggested that no particular stigma or dishonor results if a prosecutor uses the raw fact of skin color to determine the objectivity or qualifications of a juror. We do not believe a victim of the classification would endorse this view; the assumption that no stigma or dishonor attaches contravenes accepted equal protection principles. *Race cannot be a proxy for determining juror bias or competence.* 'A person's race simply 'is unrelated to his fitness as a juror''. [citations omitted]. We may not accept as a defense to racial discrimination the very stereotype the law condemns.

*Id.* 111 S.Ct. at 1370.

The foregoing cases convincingly demonstrate the principle that race shall play *no* part in the jury selection process. The exclusion of minority citizens from service as jurors constitutes a primary example of the evil the Fourteenth Amendment was designed to cure. *Batson*, 106 S.Ct. at 1716. The Equal Protection Clause guarantees the defendant that the State will not exclude members from the jury on account

of race. *Strauder*, 100 U.S. at 305. Competence to serve as a juror ultimately depends on an assessment of individual qualifications and ability to consider impartially the evidence presented at trial. *Batson*, 106 S.Ct. at 1718. *A person's race is simply unrelated to his fitness as a juror. Id.*

## III. A VIEW FROM TEXAS COURTS

Recently, our sister Court considered a similar issue in *Powers v. Palacios*, 813 S.W.2d 489 (Tex.1991). In *Powers* the plaintiff sought to question the defendant, Palacios, to establish a racially discriminatory use of peremptory strikes. Palacios conceded that race was a factor in his determination to exercise his peremptory strikes. *Id.* at 490. In reversing the judgment and remanding the case for a new trial the unanimous Court held:

> Here, Powers established that opposing counsel had exercised a peremptory challenge discriminatorily. [footnote omitted] Such 'automatic invocation of race stereotypes retards [our] progress [as a multiracial democracy] and causes continued hurt and injury.' *Edmonson [v. Leesville Concrete Co., Inc.]*, —— U.S. at ——, 111 S.Ct. at 2088. *We hold that equal protection is denied when race is a factor in counsel's exercise of a peremptory challenge to a prospective juror.*

*Id.* at 491.

A similar issue was addressed by the First Court of Appeals in *Speaker v. State*, 740 S.W.2d 486 (Tex.App.—Houston [1st Dist.] 1987). The *Speaker* Court held:

> In this case, the trial court never reached the point of a factual determination of whether purposeful discrimination had been proven because the prosecutor's explanation of his peremptory strikes was facially inadequate as a matter of law. At the hearing on the motion for new trial, the prosecutor admitted:
>
> > Although race is a factor I do consider, it is not an overriding factor and it was not an overriding factor in Mr. Speaker's trial in the selection of these jurors.
>
> While the prosecutor's candor is commendable, his statement clearly shows that he considered race a factor while selecting the jurors in the appellant's trial. This basis for juror selection has traditionally been condemned. *See Cassell v. Texas*, 339 U.S. 282, 287, 70 S.Ct. 629, 632, 94 L.Ed. 839 (1950) ([a]n accused is entitled to have the charges against him considered by a jury in the selection of which there has been neither inclusion nor exclusion because of race). *While we realize that it may be unrealistic to expect the prosecutor to put aside every improper influence when selecting a juror, we conclude that that is exactly what the law requires. Thus, a prosecutor's admission that race was an influencing factor in the selection process vitiates the legitimacy of the entire procedure.* See Batson 106 S.Ct. at 1719; *Neal v. Delaware*, 103 U.S. (Otto) 370, 397, 26 L.Ed. 567 (1881).

*Speaker*, 740 S.W.2d at 489.

A similar issue arose in *McKinney v. State*, 761 S.W.2d 549, 551 (Tex.App.—Corpus Christi 1988) where the State admitted that race was not *the reason* but was *a factor* in peremptorily challenging the black venireman. *Id.* at 550. Emphasis in original. Judge Benavides, then a Justice on the Corpus Christi Court of Appeals, held:

> In the case before us, the prosecutor did not rebut the appellant's prima facie case of discrimination by articulating a neutral explanation for the peremptory strike, but rather confirmed the discrimination by admitting that race was a factor in striking Evans. No "neutral explanation" can serve to rebut the presumption that the condemned practice of exclusion based on race occurred when the prosecutor admits that such an exclusion did occur....

*McKinney*, 761 S.W.2d at 551.

The majority, while failing to mention or distinguish *Powers, Speaker,* or *McKinney,* holds "that race may be a factor contributing to a non-racial reason for the strike, however, race may *not* be the reason for the strike." At 866. Such a holding fails to recognize that the Equal Protection Clause *forbids* the State to strike minority veniremen "on the assumption that they will be biased in a particular case *simply because*" the defendant is also a minority. *Batson,* 106 S.Ct. at 1723.

The majority reads this opinion as "mak[ing] a strong argument for the eradication of the peremptory challenge altogether." At 868, n. 7. I strongly disagree. No one who has participated in the selection of a jury can discount the importance of the peremptory challenge. Indeed, we have elevated the intelligent use of peremptory challenges to a Constitutional right. *See, Naugle v. State,* 118 Tex.Crim. 566, 40 S.W.2d 92, 94 (App.1931). However, that right is "subject to the commands of the Equal Protection Clause." *See, Batson,* 106 S.Ct. at 1719. Therefore, while the right to peremptorily challenge a venire member is important, its importance is clearly outweighed when the peremptory challenge is used to deny, on the basis of race, a citizen's Constitutional right to participate in the administration of justice by serving on a jury. Discrimination has no place in the qualification or selection of jurors and offends the dignity of the individuals and the integrity of the Court. *Powers,* 111 S.Ct. at 1366. The Equal Protection Clause extends to all citizens the rights and privileges of serving as a juror. Therefore, while the human condition will probably continue to fight for the freedom to discriminate, the justice system must not provide a means to that end. *See,* Garcia, *Strike Three and It's Out—There Goes the Peremptory,* The Houston Lawyer, November–December 1991, at 22.

## IV. ESTABLISH A BRIGHT LINE RULE

I would remain true to the clear intent and purpose of more than a century of established precedent from the United States Supreme Court. We should adopt the holdings in *Speaker, McKinney,* and *Powers* and immediately establish the following "bright line" rule: equal protection is denied whenever race is a factor in the exercise of a peremptory challenge. This "bright line" rule is necessary because one simply cannot articulate a "race-neutral" explanation for exercising a peremptory strike when race is a part of that explanation.

With these comments I concur in the results reached by the majority.

CLINTON, OVERSTREET and BENAVIDES, JJ., join this opinion.