EDWARDS 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-568-CR





GEORGE DAVID EDWARDS,




 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE 



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 93-3356, HONORABLE MIKE LYNCH, JUDGE PRESIDING



 




 George David Edwards, appellant, was convicted by a jury of aggravated robbery.
Tex. Penal Code Ann. § 29.03 (West 1994). (1) The jury assessed punishment at fifty-five years'
imprisonment. In a single point of error, appellant contends that the State used one of its
peremptory challenges in a racially discriminatory manner in violation of Batson v. Kentucky, 476
U.S. 79 (1986). We will affirm the conviction.


BACKGROUND


 The following facts were established at trial. Around 8:25 on the evening of June
14, 1993, appellant entered Joe's Fun Shop on 6th Street in Austin. He asked an employee,
Damion Schubert, for some free soda or food; Schubert refused. Appellant loitered inside the
store for fifteen to twenty minutes while some other customers drifted in and out. At about 8:40,
he approached Schubert, displayed a knife, and began reaching for the cash register. When
Schubert tried to stop appellant from taking money from the register, appellant threatened to cut
him. Schubert made no further resistance. Appellant took most of the cash from the register and
left the store.

 A few seconds after appellant left, Schubert left the store and spoke with an
acquaintance, Tim Atkinson, who worked the door at a neighboring bar. Upon hearing what had
happened, Atkinson pursued appellant, first on foot and then by bicycle. Schubert returned to the
Fun Shop and called the police.

 Atkinson caught up with appellant a few blocks away. When appellant threatened
to cut him, Atkinson decided to abandon the chase and find a police officer. He found Officer
Dwayne Kinley on patrol nearby. Atkinson informed Kinley of the robbery and provided a
description of appellant. Officer Kinley found appellant within a few minutes and apprehended
him after a brief chase. Appellant was arrested and charged with aggravated robbery.

 The panel of veniremen assembled for appellant's trial contained only one African-American, Paul Ervin Sauls, among the first thirty-five potential jurors, the "strike zone." When
the State used one of its peremptory challenges to strike Sauls, appellant's counsel objected that
the strike was racially discriminatory. After a hearing, the trial court ruled that appellant had
failed to establish racial discrimination. The trial proceeded, and appellant was convicted.


DISCUSSION


 Before addressing the merits of appellant's point of error, we will address the
State's argument that appellant waived any constitutional complaint by failing to make an
appropriate objection at trial. In order for an issue to be preserved on appeal, there must be a
timely objection that specifically states the legal basis for the objection. Rezac v. State, 782
S.W.2d 869, 870 (Tex. Crim. App. 1990). An objection stating one legal basis may not be used
to support a different legal theory on appeal. Id. The language of appellant's trial objection,
recited at the hearing, indicated that it was made "[p]ursuant to Article 35.261 of the Texas Code
of Criminal Procedure." The objection stated no constitutional grounds. The State contends that
this omission waived appellant's constitutional complaint on appeal.

 Article 35.261 of the Code of Criminal Procedure was enacted to codify and
implement Batson. Hill v. State, 827 S.W.2d 860, 863 (Tex. Crim. App. 1992). However,
subsequent evolution of the Batson doctrine has resulted in differences between that doctrine and
Article 35.261. See State ex rel. Curry v. Bowman, No. 71,606, slip op. at 4 (Tex. Crim. App.
Dec. 8, 1993). Consequently, an objection to an impermissible peremptory challenge of a
venireman based on Batson and its progeny is no longer coextensive with an objection predicated
upon Article 35.261. Id. at 6. Despite this difference, however, we conclude that appellant's
objection was sufficient to preserve his constitutional complaint.

 The purpose of requiring a timely specific objection is to afford the trial court an
opportunity to consider and rule on the complaint, and then proceed with the trial in the proper
procedural and substantive manner. Janecka v. State, 823 S.W.2d 232, 244 (Tex. Crim. App.
1990). Appellant's objection effectively served that purpose. The district court opened the
hearing on appellant's objection by announcing, "Mr. Bettis [appellant's trial counsel] has
informed the Court that he wishes to put on the record a challenge based on Batson, Article
35.261 of the Code of Criminal Procedure." After counsel had recited his objection, the court
noted that "the defendant has presented its motion and made its record concerning the Batson
challenge." Still more significant is the language of the court's ruling: "[T]he Court determines
that the burden of persuasion has not been met by the defendant to establish purposeful
discrimination under the laws of the United States and the State of Texas and Article 35.261." 
(Emphasis added.) The record sufficiently establishes that the trial court considered and ruled on
both constitutional and statutory objections to the State's peremptory strike. Requiring trial
counsel to mechanically echo the court's language would serve no purpose. Appellant's complaint
was preserved.

 We now address the merits of appellant's point of error. The analysis of a Batson
challenge proceeds in three stages. Williams v. State, 804 S.W.2d 95, 101 (Tex. Crim. App.
1991). First, the defendant must establish a prima facie case of racial discrimination in the state's
exercise of peremptory strikes. Id. Second, if the defendant establishes his prima facie case, the
state must produce a race-neutral explanation of its use of peremptory strikes. Id. Finally, if such
an explanation is produced, the defendant must sustain his burden of persuasion by rebutting the
state's race-neutral explanation. Id.

 We need not consider the first stage here. Because the State did not object to the
trial court's failure to rule on appellant's prima facie case, that issue is moot and cannot be raised
on appeal. Chambers v. State, 866 S.W.2d 9, 23 (Tex. Crim. App. 1993), cert. denied, 114 S.
Ct. 1871 (1994). With regard to the second stage, the State produced three race-neutral
explanations for striking Sauls: (1) a suspicion that Sauls harbored ill feelings toward the criminal
justice system because of his brother's murder conviction; (2) Sauls's expressions of difficulty in
arriving at a guilty verdict based on the testimony of a single witness; and (3) several misspellings
on Sauls's juror information card, indicating that he was uneducated or unintelligent. The critical
inquiry is whether appellant met his burden of persuasion by rebutting these explanations.

 We note at the outset that a trial court has considerable discretion in evaluating a
Batson challenge. Because the trial judge is able to evaluate the credibility of the witnesses at the
Batson hearing before he makes his ruling, a reviewing court must view the record in the light
most favorable to that ruling and must not disturb that ruling unless it is clearly erroneous. Harris
v. State, 827 S.W.2d 949, 955 (Tex. Crim. App), cert. denied, 113 S. Ct. 381 (1992). In other
words, a reviewing court must not reverse a trial court's Batson decision unless the reviewing
court is left with a firm conviction that a mistake has been committed. Id.

 We first consider the State's strongest explanation, the murder conviction of Saul's
brother. During voir dire, the State asked whether anyone had a relative who had been a victim
of a violent crime. Sauls responded as follows:


Mr. Sauls: Yes. A deal where a family member was around, and somebody -- I
don't know really what happened, but, you know, it was a murder involved.


Mr. Bryan [the prosecutor]: It was a murder?


Mr. Sauls: Uh-huh.


Mr. Bryan: Was the person apprehended and prosecuted?


Mr. Sauls: Yeah.


Mr. Bryan: And convicted?


Mr. Sauls: Yeah.



Sauls was questioned further in private before the judge:


Mr. Bryan: Okay. And another question that I didn't want to ask in front of the
rest of the panel, but do you have a brother who has been to the penitentiary?


Mr. Sauls: Yes, I do.


Mr. Bryan: Is it Ronnie Sauls?


Mr. Sauls: No.


Mr. Bryan: What's his name?


Mr. Sauls: Charles Sauls.


Mr. Bryan: And what did he go to the penitentiary for?


Mr. Sauls: Well, it -- well, it's kind of -- him and his girlfriend were together,
and in some kind of way the baby came up dead or something. You know, they
didn't really know who did it, but, you know --


Mr. Bryan: He went to prison on it?


Mr. Sauls: Right.



(Emphasis added.) These exchanges reveal two important facts about Sauls: his brother was
convicted of murder, and he is uncertain about whether his brother was really guilty. These facts
create an obvious inference that Sauls may harbor ill feelings toward the criminal justice system
in general and toward state prosecutors in particular. While this inference may be far from
certain, the possibility would justifiably concern any prudent prosecutor.

 By way of rebuttal, appellant points to the remainder of Sauls's testimony. After
the exchange above, the prosecutor continued with two final questions:


Mr. Bryan: What I need to know is: Is there anything about that that's going to
affect you being on the jury? In other words, do you feel like he got a bum rap on
that deal? Do you have any biases against the State or anything because of what
happened to your brother?


Mr. Sauls: No, no.


Mr. Bryan: Okay, you can be fair to the State's side of the case as well as the
defendant?


Mr. Sauls: Yes.



Appellant contends that these responses eliminate the race-neutral basis for the prosecutor's
decision to strike Sauls. We disagree.

 Divining the bias of a potential juror requires an assessment that penetrates beyond
the literal language of his responses. Biases are often subconscious, and those that are not may
be concealed behind decorous language. The prosecutor was entitled to discount Sauls's responses
to the final two questions. Common sense counsels that a man who feels that his brother was
unjustly convicted and imprisoned could have difficulty judging the State's case impartially. 
Viewing Sauls's testimony as a whole in the light most favorable to the trial court's decision, we
conclude that the court's ruling that the State's striking of Sauls was not racially discriminatory
is not clearly erroneous. We overrule appellant's point of error.

 Because we have decided that the State's first explanation for striking Sauls was
a sufficient basis for the trial court's overruling of appellant's Batson challenge, we need not
address the State's other explanations.











CONCLUSION


 The conviction is affirmed.





 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Jones and Kidd; Chief Justice Carroll Not Participating

Affirmed

Filed: October 26, 1994

Do Not Publish
1. [1] This offense took place before September 1, 1994, and is governed by the law in effect at
the time the offense was committed. Penal Code, 73d Leg., R.S., ch. 900, § 1.18, 1993 Tex.
Gen. Laws 3586, 3705. Because the code amendments effective September 1, 1994, have no
substantive effect on this offense, the current code is cited for the sake of convenience.