# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00021-CR

**Bijan Mauray Wolridge, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF LEE COUNTY, 21ST JUDICIAL DISTRICT
### NO. 5761, HONORABLE JOHN L. PLACKE, JUDGE PRESIDING

Appellant Bijan Mauray Wolridge appeals his conviction for retaliation. *See* Tex. Pen. Code Ann. ' 36.02(a)(1) (West Supp. 2002).[1] The jury found appellant guilty and the trial court assessed his punishment at imprisonment for five years and six months.

### Point of Error

Appellant advances a single point of error. He contends that the Atrial court erred in overruling appellant=s *Batson* challenge because the State failed to establish a racially neutral explanation for the State=s removal of all of the Black veniremen from the jury panel.@ Appellant refers to *Batson v. Kentucky*, 476 U.S. 79 (1986), where the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution forbids a prosecutor to peremptorily challenge potential jurors solely on account of their race. We will affirm.

---

[1] The current code is cited for convenience.

## Background

The indictment charged appellant with retaliation for threatening to kill a police officer, Jamie Diaz, Aon the account of the service of Jamie Diaz as a public servant.@ Neither the factual nor legal sufficiency of the evidence is challenged. Suffice it to say, the record shows that on July 21, 2001, Giddings Police Officer Jamie Diaz responded to a call concerning a noise disturbance at apartment four of the Windsor Square Apartments. Upon arriving at the apartment complex, Diaz encountered appellant and arrested him for possession of marihuana. Appellant was handcuffed with his arms behind his back and placed in another officer=s patrol car. While the officers were occupied elsewhere, appellant escaped. He was recaptured at his friend=s house, nude, but still handcuffed. Appellant was taken to jail. While being booked, appellant became abusive, combative, and called Diaz a Awetback.@ In the presence of other officers, appellant twice threatened to kill Diaz. Officer Diaz had arrested appellant on several other occasions. Diaz took the threats seriously and believed that the threats were made because of his service as a police officer.

## The *Batson* Motion

The record reflects the voir dire examination of the jury panel on October 17, 2001. The jury strike lists (peremptory challenges) are contained in the clerk=s transcript. Apparently after the clerk of the court compared the strike list of both parties, *see* Tex. Code Crim. Proc. Ann. art. 35.26(a) (West 1989), the trial court swore and impanelled the jury at 11:50 a.m. The balance of the jury panel was discharged at 12:00 p.m. The chosen jury was instructed to return to court at 1:30 p.m.

Before the court reconvened at 1:30 p.m., appellant filed a "motion to order a new jury panel, or to disallow State=s peremptory challenges because of racial discrimination." The trial court summarily overruled the motion but allowed appellant to make a record on the *Batson* motion. Appellant=s counsel then orally asserted that after the challenges for cause were ruled upon, there remained two qualified African-Americans on the jury list, who were of the same race as appellant; that the State used two of its peremptory challenges on these two prospective jurors, a "Ms. Clemons" and a "Ms. Burns"; and that the State=s action was racially motivated. No evidence was offered in response to the trial court=s inquiry; the State simply stated that it had an explanation for its peremptory strikes but the *Batson* motion was not timely. The trial court made no further ruling. There was no response to the trial court=s next inquiry, "Anything further before we bring the jury in?"

Appellant concedes that there is an issue of the timeliness of his *Batson* motion. He contends that there was little time to object between the clerk=s determination of the composition of the jury from the strike lists and the swearing in of the jury. He urges that he filed his *Batson* motion immediately "after lunch" and prior to the commencement of the trial.

The United States Supreme Court made clear in *Batson* that "in light of the variety of jury selection practices followed in our state and federal trial courts," it would make no attempt to instruct these courts how best to implement the *Batson* decision. *Batson*, 476 U.S. at 100 n.24. To codify and implement the *Batson* decision, the Texas Legislature enacted article 35.261. Tex. Code Crim. Proc. Ann. art. 35.261 (West 1989). Whenever a claim is made that veniremembers have been peremptorily challenged on the basis of race, article 35.261 must be followed. *Hill v. State*, 827 S.W.2d 860, 863 (Tex. Crim. App. 1992).

For a *Batson* objection to be timely under article 35.261, it must be made A[a]fter the parties have delivered their lists to the clerk under article 35.261 of this code and before the court has impanelled the jury.@ Article 35.261; *Hill*, 827 S.W.2d at 864; *Saldivar v. State*, 980 S.W.2d 475, 482-84 (Tex. App.CHouston [14th Dist.] 1998, pet. ref'd). A jury is Aimpanelled@ when the members of the jury have been selected and sworn. *Hill*, 827 S.W.2d at 864.

It is clear that appellant=s *Batson* motion was not timely. No error was preserved for appellate review. The trial court did not abuse its discretion in denying the motion. The point of error is overruled.

The judgment is affirmed.

John F. Onion, Jr., Justice

Before Chief Justice Aboussie, Justices Yeakel and Onion[*]

Affirmed

Filed:   August 30, 2002

Do Not Publish

---

[*]   Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov=t Code Ann. ' 74.003(b) (West 1998).