TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00400-CR






Johnny Alvarado, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0961888, HONORABLE FRED A. MOORE, JUDGE PRESIDING







PER CURIAM


 Johnny Alvarado pled guilty to the offenses of burglary of a habitation and aggravated
sexual assault and elected to have a jury assess punishment. The jury sentenced him to forty years in prison
and a $2,000 fine for the burglary and to sixty-five years in prison and a $5,000 fine for the aggravated
sexual assault. On appeal, he contends that the State violated a statute and the federal and state
constitutions by exercising a peremptory challenge on the basis of the ethnicity or race of venire members. 
We will affirm the judgment.




Trial Procedures and Standard of Appellate Review for Batson Challenges


 Texas essentially codified the standard for detecting racial discrimination in jury selection
established by the Supreme Court in Batson v. Kentucky, 476 U.S. 79 (1986), by enacting Texas Code
of Criminal Procedure Annotated article 35.261 (West 1989). See Hill v. State, 827 S.W.2d 860, 863
(Tex. Crim. App. 1992). The statute requires that the trial court dismiss the venire upon the defendant's
motion if the court determines

 

 that the defendant is a member of an identifiable racial group, that the attorney representing
the state exercised peremptory challenges for the purpose of excluding persons from the
jury on the basis of their race, and that the defendant has offered evidence of relevant facts
that tend to show that challenges made by the attorney representing the state were made
for reasons based on race. If the defendant establishes a prima facie case, the burden then
shifts to the attorney representing the state to give a racially neutral explanation for the
challenges. The burden of persuasion remains with the defendant to establish purposeful
discrimination.



Code art. 35.261(a).

 On appeal of a rejected Batson challenge, we apply a "clear error" standard of review. 
See Hernandez v. New York, 500 U.S. 352, 364-65 (1991); Hill, 827 S.W.2d at 865-66. We review
all of the evidence in the light most favorable to the district court's ruling and determine if the ruling was
clearly erroneous. See Salazar v. State, 804 S.W.2d 95, 101 (Tex. Crim. App. 1991). If, after reviewing
all the evidence, we cannot say that the district court's ruling was clearly erroneous, we must uphold the
ruling even if we would have decided differently. See Anderson v. Bessemer City, 470 U.S. 564, 573-74
(1985). For us to conclude that the court's decision was clearly erroneous, we must be left with a "definite
and firm conviction that a mistake has been committed." Vargas v. State, 838 S.W.2d 552, 554 (Tex.
Crim. App. 1992).


Discussion


 Alvarado is Hispanic. The State used three of its ten peremptory strikes on Hispanic
persons: Aurelio Fox, Iyarodes Garcia, and Patricia Rodriguez. Alvarado had two Hispanics struck for
cause and used a peremptory strike on a third. One Hispanic served on the jury and another was not
reached; had the parties' strikes not overlapped on one juror, this remaining Hispanic venire member would
have been empaneled. The State's offer of race-neutral explanations for its strikes moots the issue of
whether the defendant made a prima facie case of discriminatory strikes; we will not review that
determination. Malone v. State, 919 S.W.2d 410, 412 (Tex. Crim. App. 1996).

 Aurelio Fox. The prosecutor testified that she did not know that Fox was Hispanic. She
said she struck him because he had been accused of reckless conduct and because she did not feel he had
been responsive to her, though she could not recall a particular instance of nonresponsiveness. She said
he did not look Hispanic. She said she did not use first names during voir dire, so his Hispanic-sounding
first name made no impact on her.

 The trial court did not err by finding no impropriety in this strike. Alvarado criticizes the
prosecutor for stating that she did not notice Fox was Hispanic, indicating that the prosecutor was either
stonewalling the court with this explanation or wrongfully inattentive to ethnicity. As to the former, the trial
court is the better and prescribed judge of credibility; we find nothing in the record to indicate that
accepting the response was clearly erroneous. As to the latter, if the prosecutors were inattentive to
ethnicity, they acted in accord with the color-blind selection process Batson promotes; that case requires
race neutrality, not affirmative action. Though asking questions about his experience as an accused might
have dispelled the State's belief that he would be a bad State's juror, the failure to ask those questions does
not make the belief racially discriminatory or pretextual; Batson does not prohibit peremptory exclusion
of jurors who have been accused of crimes.

 Iyarodes Garcia. The prosecutor stated she struck Garcia because Garcia was too
young, said rehabilitation was the main reason for punishment, gave responses in the punishment area that
the prosecutor did not like, wavered in her answer to a question regarding whether she could convict based
on one witness's testimony, and had difficulty convicting based on one witness's testimony. Again, the
prosecutor did not recall specific instances of nonresponsiveness, but felt that Garcia's demeanor was too
quiet. She testified that youth was a factor, not in isolation, but when combined with her reticence.

 Alvarado challenges these explanations. He focuses on the fact that the State struck only
two of the six jurors who were Garcia's age or younger. He contends that Garcia's responses to the
queries on punishment and one-witness convictions were not anti-State. With regard to whether
punishment or rehabilitation was a greater goal, Garcia said, "I think rehab because they're going to be
away from society for so long that's a punishment there. They're going to eventually get out, so it would
be better for them to learn something, to learn what is wrong and what not to do." Alvarado compares her
with Ms. Morgan, a venire member not struck, who said rehabilitation was more important. Also, when
asked whether she could convict based on one witness's testimony, Garcia responded, "It would depend
on the evidence and if the witness was credible." 

 The State's main response is that it struck Garcia for a combination of factors, not age
alone. The State notes that one of the young venire members it did not strike was Hispanic. The State also
notes that Morgan initially said that rehabilitation and punishment were both important, but chose
rehabilitation when forced to choose. The State does not attempt to explain why Garcia's response to the
one-witness question was a tenable reason to strike Garcia.

 While Garcia's responses may be sensible and appealing, we see no clear error in the
court's refusal to find race or ethnicity-based discrimination in the State's strike. Nothing in Batson
prevents the State from seeking to empanel a jury that favors retribution over rehabilitation. Garcia's
response, favoring rehabilitation, clearly put her outside that camp and arguably further away than Morgan,
who favored rehabilitation only when required to choose. The court did not err if it accepted the State's
explanation that youth was merely a factor in the decision. Alvarado proved neither race or ethnicity-consciousness nor pretext in the State's reasons for the strike.

 Patricia Rodriguez. The prosecutor said she felt Rodriguez was too young, had a lot of
trouble and was hesitant in responding to questions, did not make eye contact, lacked sufficient ties to the
community based on a limited work record (nine days on the job), and lacked the maturity to sit on a
serious case based on her response that her hobby was watching her boyfriend play basketball in the park. 
The prosecutor denied that she had a threshold age for jurors, but said age was a factor in her
determinations.

 Alvarado assails all these reasons. He reiterates that panelists younger than Rodriguez
served on the jury. He asserts that the record does not reveal hesitance, lack of eye contact, or shyness. 
He touts her lifetime residence in Travis County as sufficient ties to the community. He complains that the
State's criticism of her hobby is illogical, not supported by the record, and the product of extremely
subjective reasoning by the prosecution.

 Batson and its progeny do not preclude subjective reasoning, however, so long as it is not
race or ethnicity-based. The State can seek to empanel mature, independent-minded women--particularly
for a case of aggravated sexual assault by a man against a woman--and a woman who lists watching her
boyfriend recreate at a park as one of two hobbies might not fit that definition as well as others; the
reasoning is not so strained as to nullify the explanation. While the record does not reflect all aspects of
Rodriguez's deportment, it does show the prosecutor asking her to speak up once and defense counsel
feeling the need to rephrase a question to alleviate confusion; these instances support the State's
characterization of Rodriguez. The prosecutor clarified in her testimony that the community tie Rodriguez
lacked was work experience, not length of residence; nine days on the job is fairly brief. We cannot say
that the trial court clearly erred by declining to find that the State struck Rodriguez for her ethnicity.


Conclusion


 The State provided race-neutral explanations for each of the three challenged strikes. 
Alvarado undercut some of the consistency and logical basis for these explanations, but did not show them
to be so unreasoned as to be mere pretexts. Nor did he introduce any evidence or raise an inference that
the State had a race or ethnicity-based reason for any of the strikes. We overrule points one and two. We
affirm the judgment.



Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: August 14, 1997

Do Not Publish



ment there. They're going to eventually get out, so it would
be better for them to learn something, to learn what is wrong and what not to do." Alvarado compares her
with Ms. Morgan, a venire member not struck, who said rehabilitation was more important. Also, when
asked whether she could convict based on one witness's testimony, Garcia responded, "It would depend
on the evidence and if the witness was credible." 

 The State's main response is that it struck Garcia for a combination of factors, not age
alone. The State notes that one of the young venire members it did not strike was Hispanic. The State also
notes that Morgan initially said that rehabilitation and punishment were both important, but chose
rehabilitation when forced to choose. The State does not attempt to explain why Garcia's response to the
one-witness question was a tenable reason to strike Garcia.

 While Garcia's responses may be sensible and appealing, we see no clear error in the
court's refusal to find race or ethnicity-based discrimination in the State's strike. Nothing in Batson
prevents the State from seeking to empanel a jury that favors retribution over rehabilitation. Garcia's
response, favoring rehabilitation, clearly put her outside that camp and arguably further away than Morgan,
who favored rehabilitation only when required to choose. The court did not err if it accepted the State's
explanation that youth was merely a factor in the decision. Alvarado proved neither race or ethnicity-consci