**Opinion filed May 14, 2026**



## In The

# Eleventh Court of Appeals

_____

## No. 11-24-00254-CR

_____

## JESUS AGUILAR RONDAN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 244th District Court**
**Ector County, Texas**
**Trial Court Cause No. C-23-0745-CR**

## M E M O R A N D U M   O P I N I O N

Appellant, Jesus Aguilar Rondan, was charged by indictment with one count of sexual assault of a child, a second-degree felony (Count One), and one count of indecency with a child by sexual contact, a second-degree felony (Count Two). *See* TEX. PENAL CODE ANN. §§ 22.011(a)(2)(A), (f), 21.11(a)(1), (d) (West 2026). The jury acquitted Appellant on Count One and convicted him on Count Two. The jury assessed his punishment at six years' confinement in the Institutional Division of the

Texas Department of Criminal Justice for Count Two, and the trial court sentenced Appellant accordingly.

Appellant raises four issues on appeal. Appellant challenges his conviction, arguing that the trial court erred: (1) in granting the State's voir dire challenge for cause "based solely on another venire member's unverified allegation of misconduct," (2) in permitting the State to use "racially discriminatory peremptory strikes of Hispanic jurors," and (3) in admitting an audio recording of the minor complainant over Appellant's timely Rule 403 objection. *See* TEX. R. EVID. 403. Appellant also contends that: (4) the State's closing argument during the punishment phase constituted fundamental error. We affirm.

## I. *Factual and Procedural History*

Ector County Sheriff's Office Deputy Marina Lujan was on duty on January 8, 2023, when she received a dispatch call around 1:40 a.m. concerning the Far West Event Center, where a quinceañera was just ending. Upon arrival, Deputy Lujan was flagged down by a minor, who advised her that she had called 9-1-1 for her friend, fifteen-year-old A.M.[1]

A.M.'s interactions with Deputy Lujan were captured on Deputy Lujan's body camera recording, which was admitted into evidence at trial. A.M. was taken to Deputy Lujan's patrol vehicle, where she complained of abdominal pain and advised Deputy Lujan that she had been sexually assaulted inside a vehicle in the parking lot. A.M. identified her assailant as a "friend of a friend" and said he had given her alcohol earlier in the evening. A.M. was transported to the hospital, where she underwent a sexual assault examination. A blood draw was taken, and her blood

---

[1]To protect the identity of the complainant, we refer to her by the pseudonym given in the indictment. *See* TEX. CONST. art. I, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process"); *see generally* TEX. R. APP. P. 9.8 cmt. ("The rule does not limit an appellate court's authority to disguise parties' identities in appropriate circumstances in other cases.").

alcohol level of 0.12 exceeded the legal limit. PENAL § 49.01(2)(B) (West 2011). The next day, A.M. identified Appellant in a police lineup.

Cecelia Lujan, twenty-four years old at trial, testified that she had been the one who invited Appellant to the quinceañera that evening, having only previously communicated with him on social media. Lujan testified that her friend witnessed A.M. "throwing herself" at Appellant at the quinceañera, and at some point, Lujan left. Lujan said Appellant called her afterwards and admitted to having sex with A.M. "because she wanted it." Appellant was twenty-six years old at the time.

A.M. testified that Appellant told her that he was twenty years old, and she told him that she was seventeen, although she was only fifteen. A.M. said that the two met for the first time that evening, and after dancing together and losing sight of her friends, Appellant offered to help her find them outside the venue. Instead, Appellant took her to his vehicle where they started kissing. A.M. testified that Appellant kissed and touched her breasts before penetrating her vaginally. Afterwards, as she limped back to the venue, A.M. bumped into her friend in the parking lot and asked someone to call the police.

A.M. received a friend request on social media from Appellant after the incident. Surveillance footage from the venue was admitted at trial, and A.M. could be seen leaving the venue with a male in a black jacket, blue jeans, and a large cowboy hat. A.M. reappears approximately thirty minutes later, being held up by a female, and the same male is walking close behind them. Seconds after A.M. and the female enter the venue, the male turns around and leaves.

Lisa Montoya, the sexual assault nurse examiner who examined A.M., testified that A.M. had markings on her breasts where A.M. said Appellant had "bit and sucked" her. A.M. also had "complain[ed] about lower abdominal pain," and Montoya observed "multiple injuries to [A.M.'s] genitalia," including "purple/blue discoloration" and a laceration that was still bleeding.

3

Montoya obtained swab samples from A.M.'s breasts. Because A.M. could not tolerate a speculum-aided examination, Montoya was only able to obtain swab samples from A.M.'s exterior vaginal area. Appellant's DNA was found to be a contributor on the breast swab analyzed. While semen was detected on the vaginal swabs tested and there was male DNA found in the epithelial fractions, Brandon Mount, a Texas Department of Public Safety forensic DNA analyst, testified that A.M.'s "DNA overwhelmed any other foreign DNA."

The jury acquitted Appellant of sexual assault of a child as alleged in Count One, but it returned a guilty verdict on Count Two, indecency with a child by contact.

During the punishment proceedings, the State did not deliver an opening statement and rested its case without calling any witnesses. Appellant called one witness: his friend's wife, Briana Navarrete, who testified that she knew Appellant "[q]uite a bit." According to Navarrete, Appellant had no criminal history and was married with two young children.

Appellant's trial counsel argued in closing that Appellant was eligible for probation, which he averred was an appropriate punishment for "what he was actually convicted of," namely, "going to second base with a girl who told him she was 17. . . . [T]he age of consent . . . in Texas." Appellant asked for "mercy" and "grace." The State, in relevant part, responded by inquiring "[w]hat's mercy" for A.M. and other girls in the community, making a plea for law enforcement, and asking "[w]hat message . . . [they] want to send to [the] community and to all those other girls." Appellant was sentenced to six years' confinement, and this appeal followed.

## II. *Excused Veniremember*

Appellant argues in his first issue that the trial court erred in granting the State's challenge for cause against Veniremember No. 39. As a preliminary matter, however, the State argues on appeal that Appellant mischaracterizes its challenge to

4

Veniremember No. 39. The State asserts that it did not seek to strike Veniremember No. 39 for cause pursuant to Article 35.16 of the Code of Criminal Procedure but instead sought to recognize Veniremember No. 39 as unqualified to serve, citing the Government Code at trial. We agree.

A. *Relevant Background*

During a break in voir dire, Veniremember No. 8 approached the bench and informed the trial court and parties that he recognized Veniremember No. 39 from a YouTube video, which reportedly showed Veniremember No. 39 "caught trying to have sex with a little boy." The trial court instructed the parties to investigate the accusation. When the parties returned, the State notified the trial court on the record that it found the video on Facebook, and Veniremember No. 39 matched the "profile picture" belonging to the alleged predator captured on camera communicating with an individual posing as a minor. The video was not admitted into evidence or shown to Appellant's trial counsel.[2] Appellant argued that Veniremember No. 39 should not be struck as he did not appear to have been formally charged, he is "innocen[t] until proven guilty," and that it was possible he had "a brother or cousin who looks like him." The trial court tabled the discussion and voir dire proceeded.

When the discussion resumed, the State argued that Veniremember No. 39 lacked "good moral character" and was therefore unqualified to sit as a juror. Appellant's trial counsel argued:

> Your Honor, if I may. If we heard any evidence at all, it's all hearsay and we have to hold these rules of the United States - - it's innocent until proven guilty, so hearsay, I knew him in high school. The guy had no present - - I mean, he wasn't there. He didn't see anything by himself. It's just what he sees on social media which is exactly what we don't want. You don't want prejudiced jurors.

Veniremember No. 39 was "stricken" by the trial court.

---

[2]The State "shared a picture" with Appellant's trial counsel.

B. *Standard of Review and Applicable Law*

Section 62.102 of the Texas Government Code prescribes the qualifications needed to serve as a juror in a civil or criminal case, which includes the requirement that a person be of "good moral character." *See* TEX. GOV'T CODE ANN. § 62.102(a)(5) (West Supp. 2025). A qualified person may nonetheless be deemed "incapable or unfit" to serve in a particular criminal case if stricken for cause for any of the enumerated reasons under Article 35.16 of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 35.16 (West 2006); *Wells v. State*, 611 S.W.3d 396, 428 (Tex. Crim. App. 2020) (describing the procedure for calling, qualifying, and selecting a jury in a criminal case); *see also Mayo v. State*, 4 S.W.3d 9, 12 (Tex. Crim. App. 1999) (exploring the relationship between Section 62.102 of the Government Code and Article 35.16 of the Code of Criminal Procedure, noting that Section 62.102 applies to all juries and Article 35.16 contains additional requirements that apply to criminal cases).

Significantly, a defendant does not have the right to have any particular individual sit on the jury; rather, a defendant's "only substantial right is that the jurors who do serve be qualified." *Colone v. State*, 573 S.W.3d 249, 261 (Tex. Crim. App. 2019) (quoting *Jones v. State*, 982 S.W.2d 386, 392–93 (Tex. Crim. App. 1998)). "The defendant's rights go to those who serve, not to those who are excused." *Jones*, 982 S.W.2d at 393. Thus, "the erroneous excusing of a veniremember will call for reversal only if the record shows that the error deprived the defendant of a lawfully constituted jury." *Id.* at 394; *see* TEX. R. APP. P. 44.2(b); *Gray v. State,* 233 S.W.3d 295, 301 (Tex. Crim. App. 2007) (holding that trial court's erroneous exclusion of potential juror for economic reasons did not merit reversal because defendant did not show he did not "received a trial by an impartial jury comprised of qualified individuals"); *see also* CRIM. PROC. art. 44.46 (West 2018) (relating to reversal if a disqualified juror serves). If the jurors who serve are

qualified, then the jury is lawfully constituted, the defendant's substantial rights are not affected, and reversal of the defendant's conviction based on the erroneous dismissal of a veniremember is not required.[3] *Jones*, 982 S.W.2d at 394; *Williams v. State*, 417 S.W.3d 162, 173–74 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd).

C. *Analysis*

Although Appellant recognizes the long-standing precedent that a "defendant is not entitled to have any specific juror serve, only that the jury ultimately empaneled be fair and impartial," Appellant argues we must "presume prejudice when voir dire lacks evidence of bias, disqualification, or misconduct verified on the record." However, we need not decide whether the trial court erred in dismissing Veniremember No. 39 pursuant to Section 62.102 or Article 35.16 because Appellant has not shown that he was deprived of a lawfully constituted jury. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009) (holding that when *Witherspoon* (death penalty) error is not at issue, the appellate court need not decide whether error occurred because "the erroneous excusal of a veniremember will call for reversal 'only if the record shows that the error deprived the defendant of a lawfully constituted jury'" (quoting *Jones*, 982 S.W.2d at 394)). There is nothing in

---

[3]Intertwined in his argument for his first issue, Appellant contends that the State violated *Brady* by failing to disclose the video of Veniremember No. 39, which necessitates "a de novo constitutional inquiry into whether the nondisclosure compromised fairness." *See generally Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"); *Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011) ("*Brady* essentially created a federal constitutional right to certain minimal discovery."). Appellant does not elaborate or cite to authority in support of this contention. Moreover, Appellant was aware of the video, did not request to see the video on the record, and did not make this objection at trial; therefore, the issue is not preserved for our review. *See* TEX. R. APP. P. 33.1; *see also Ferguson v. State*, No. 11-13-00317-CR, 2015 WL 6681221, at *5 (Tex. App.—Eastland Oct. 30, 2015, pet. ref'd) (mem. op., not designated for publication) ("In order to preserve an alleged *Brady* violation, a defendant must object and make the trial court aware of the complaint as soon as the objection becomes apparent."); *see, e.g., Delgado v. State*, 635 S.W.3d 730, 749 (Tex. App.—Dallas 2021, pet. ref'd) (rejecting appellant's argument that the trial court's error in striking a juror was "of constitutional dimension because it was 'about the juror's right to sit on the jury' or about the juror's right to free speech" where appellant failed to raise the objections at trial).

the record that indicates that the selected jurors were unfit or anything but impartial. *See Ford v. State*, 73 S.W.3d 923, 925 (Tex. Crim. App. 2002) ("[W]e presume that jurors are qualified absent some indication in the record to the contrary."); *Delgado*, 635 S.W.3d at 749. To the contrary, Appellant was acquitted of sexual assault of a child and although convicted of indecency, he was assessed a sentence at the lower end of the punishment range for that offense. *See* PENAL § 12.33 (West 2019), § 21.11(d). Accordingly, we hold that any alleged error by the trial court in excusing Veniremember No. 39 did not affect Appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Colone*, 573 S.W.3d at 261; *Gamboa*, 296 S.W.3d at 580. We overrule Appellant's first issue.

## III. *Batson*

In his second issue, Appellant argues that the State used seven of its ten peremptory strikes and one challenge for cause against Hispanic venire members, and the trial court erred in allowing the State to exercise its strikes in a racially discriminatory manner that led to the exclusion of Hispanic jurors. From the record, however, we observe that of Appellant's ten peremptory strikes, five were used on those same Hispanic jurors. The State argues that Appellant's issue was not preserved for review, and we agree.

The United States Supreme Court in *Batson* held that the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution forbids the use of peremptory challenges to strike potential jury members solely on account of their race. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986); *see* U.S. CONST. amend. XIV, § 1. The Supreme Court left to the individual states the procedural mechanism for a *Batson*-based objection. *Hill v. State*, 827 S.W.2d 860, 863 (Tex. Crim. App. 1992) (citing *Batson*, 476 U.S. at 100 n.24). In Texas, the Legislature codified *Batson* in Article 35.261 of the Texas Code of Criminal Procedure. CRIM. PROC. art. 35.261; *Hill*, 827 S.W.2d at 863. "Therefore, whenever a claim is

8

made that veniremembers were peremptorily challenged on the basis of their race, [A]rticle 35.261 must be followed." *Hill*, 827 S.W.2d at 863.

Under Article 35.261(a), a *Batson* challenge must be made after the parties have delivered their lists of peremptory strikes and "before the court has impaneled the jury." CRIM. PROC. art. 35.261; *see Hill*, 827 S.W.2d at 864; *see, e.g.*, *Carter v. State*, No. 06-19-00172-CR, 2020 WL 5223327, at *4 (Tex. App.—Texarkana Sept. 2, 2020, pet. ref'd) (mem. op., not designated for publication) ("Since Carter's *Batson* challenge was made after the jury was selected and sworn, it was not timely."). A *Batson* error is subject to the same "principles of ordinary procedural default." *Irsan v. State*, 708 S.W.3d 584, 600 (Tex. Crim. App. 2025) (quoting *Batiste v. State*, 888 S.W.2d 9, 17 n.5 (Tex. Crim. App. 1994)). Thus, the failure to timely assert a *Batson* error, waives appellate review. *Hill*, 827 S.W.2d at 864; *see, e.g.*, *Garcia v. State*, No. 11-21-00145-CR, 2024 WL 3528547, at *8 (Tex. App.— Eastland July 25, 2024, pet. ref'd) (mem. op., not designated for publication) ("Appellant's failure to timely object to the composition of the jury bars review of the alleged *Batson* error."); *Thierry v. State*, No. 11-00-00038-CR, 2000 WL 34233671, at *1 (Tex. App.—Eastland Aug. 31, 2000, no pet.) (mem. op., not designated for publication) ("In this case, appellant did not raise the *Batson* issue until after the jury had been sworn. Thus, we hold that appellant failed to preserve the issue for appellate review.").

Here, Appellant did not make a *Batson* challenge in the trial court, either before or after the jury was impaneled. Appellant raises the issue for the first time on appeal, and as a result, he has not preserved this issue for appellate review. *See*

CRIM. PROC. art. 35.261(a); *Hill*, 827 S.W.2d at 864; *Garcia*, 2024 WL 3528547, at *8.[4]  We overrule Appellant's second issue.

IV.  *Rule 403*

In his third issue, Appellant argues that the trial court abused its discretion in admitting Deputy Lujan's body camera recording over his Rule 403 objection.

A.  *Standard of Review and Applicable Law*

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010).  We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement.  *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001). We will uphold a trial court's evidentiary ruling on appeal if it is correct on any theory of law that finds support in the record.  *Gonzalez v. State*, 195 S.W.3d 114, 125–26 (Tex. Crim. App. 2006); *Dering v. State*, 465 S.W.3d 668, 670 (Tex. App.—Eastland 2015, no pet.).

Rule 403 of the Texas Rules of Evidence "excludes otherwise relevant evidence when the costs of admission outweigh its utility."  *Hart v. State*, 688 S.W.3d 883, 891 (Tex. Crim. App. 2024).  In accordance with the rule, "[t]he [trial] court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403.  Evidence is unfairly prejudicial when it has the undue tendency to suggest an improper basis for reaching a decision.  *Reese v. State*, 33

---

[4]Appellant also raises a constitutional challenge, that he was deprived of a jury comprised of a fair-cross section of the community under the Sixth Amendment, by arguing that the "discriminatory exclusion of Hispanic jurors" resulting from the *combined* effect of the State's preemptory strikes and the excuse of Veniremember No. 39 "for cause."  Appellant's argument is misplaced.  "The Sixth Amendment's fair-cross-section requirement . . . applies to the process by which the venirepersons are summoned to jury duty." *Gray*, 233 S.W.3d at 301.  Moreover, we have already determined that the excuse of Veniremember No. 39 was not based on a challenge for cause.

S.W.3d 238, 240 (Tex. Crim. App. 2000); *Render v. State*, 347 S.W.3d 905, 921 (Tex. App.—Eastland 2011, pet. ref'd). We utilize the *Montgomery* factors in our determination of whether evidence is admissible under Rule 403: "(1) the strength of the evidence's probative value, (2) the potential for the evidence to 'impress the jury in some irrational but nevertheless indelible way,' (3) [t]he amount of time required at trial to develop the evidence, and (4) the proponent's need for the evidence." *Hart*, 688 S.W.3d at 891 (quoting *Montgomery*, 810 S.W.2d at 389–90). In any given case, "these factors may well blend together in practice." *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

Rule 403 does not require that the balancing test be performed on the record. *Greene v. State*, 287 S.W.3d 277, 284 (Tex. App.—Eastland 2009, pet. ref'd). In overruling a Rule 403 objection, the trial court is assumed to have applied a Rule 403 balancing test and determined that the evidence was admissible. *Id.* Moreover, the balancing of these factors "is always slanted toward admission, not exclusion, of otherwise relevant evidence." *Irsan*, 708 S.W.3d at 616 (quoting *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *Luna v. State*, 687 S.W.3d 79, 98 (Tex. App.—Eastland 2024, pet. ref'd) ("Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial.").

B. *Analysis*

The recording at-issue is forty-eight minutes long. Prior to the admission of the recording, Appellant objected, asserting a hearsay challenge and his rights under the Sixth Amendment's Confrontation Clause. The recording captured Deputy Lujan making initial contact with A.M., Deputy Lujan briefly interacting with others at the venue, and A.M. speaking in broken phrases about what had transpired. A.M. cried on and off throughout the recording and complained of lower body pain. After the recording was admitted and was being played for the jury, during which the State

11

contemporaneously questioned Deputy Lujan, Appellant objected, in relevant part, on Rule 403 grounds. Appellant argued that the recording was "[more] prejudicial than probative and cumulative to especially putting on more evidence of [A.M.] crying and being distraught." At the time of Appellant's objection, however, approximately twenty-seven minutes of the recording had already been played, with twenty-one minutes remaining, beginning from where Deputy Lujan arrived at the hospital.

To preserve a complaint for appellate review, a defendant must timely object to the trial court. *See* TEX. R. APP. P. 33.1; *Spencer v. State*, No. 11-16-00248-CR, 2018 WL 2022688, at *4 (Tex. App.—Eastland Apr. 30, 2018, no pet.) (mem. op., not designated for publication) (holding that where the appellant waited to object until after videos had been admitted, published to the jury, and had begun playing, he failed to preserve his argument for appellate review). Assuming, but not deciding, that Appellant did not waive this issue by waiting until half the recording had already been played before objecting on the basis that he now raises on appeal, we conclude that the trial court did not abuse its discretion in overruling Appellant's Rule 403 objection.

The first and fourth factors in the Rule 403 balancing test require that we identify the strength of the probative value and the State's need for the evidence, respectively. *See Hart*, 688 S.W.3d at 891. At the outset we observe that, other than A.M. and Appellant, there were no witnesses to the sexual assault alleged. Throughout trial, but notably in the cross-examination of Deputy Lujan and Montoya, Appellant repeatedly suggested that A.M. had fabricated her allegations. Appellant's trial counsel questioned A.M.'s injuries and then, in his cross-examination of A.M. regarding her prior inconsistent statements, accused her of having lied. *See Espinoza v. State*, No. 11-19-00232-CR, 2022 WL 3903774, at *9 (Tex. App.—Eastland Aug. 31, 2022, pet. ref'd) (mem. op., not designated for

12

publication) (noting, in our analysis under Rule 403, that extraneous evidence can "serve[ ] to rebut the suggestion that [the complainant's] reports were contrived"); *see also Johnson v. State*, No. 01-22-00505-CR, 2024 WL 269613, at *21 (Tex. App.—Houston [1st Dist.] Jan. 25, 2024, no pet.) (mem. op., not designated for publication) (appellant premised his defense on the victim's alleged untruthfulness, and the trial court held that the audiotape recording was probative of the victim's credibility; appellant further opened the door for the admission of the tape by attacking the victim's credibility). The recording was therefore probative as to A.M.'s credibility and the ultimate issue in the case—whether Appellant caused A.M.'s injuries. These factors weigh in favor of admission. *See Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009).

Regarding the second factor, the phrase "unfair prejudice" in Rule 403 "refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Gigliobianco*, 210 S.W.3d at 641 (citing *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005)). We recognize that evidence of a sexual nature involving minors is inherently inflammatory and prejudicial. *See Roe v. State*, 660 S.W.3d 775, 785 (Tex. App.—Eastland 2023, pet. ref'd). However, the question remains whether it is *unfairly* prejudicial in this case. *See Wishert v. State*, 654 S.W.3d 317, 334 (Tex. App.—Eastland 2022, pet. ref'd). Before the recording was admitted into evidence, Deputy Lujan testified that A.M. was "crying, screaming" and could be heard over the loud music playing in the venue. Deputy Lujan further testified that A.M. continued to scream and repeatedly expressed being in pain as she was escorted to Deputy Lujan's patrol unit, throughout her questioning, and while being transported to and in the hospital. Courts have held that, when witness testimony describes the demeanor of the victim or materials referred to prior to the exhibit being admitted, the contents of the exhibit are less likely to impress the jury in an irrational way. *See, e.g., Johnson*, 2024 WL 269613,

13

at *21 (five witnesses described victim's demeanor before audiotape of her crying admitted into evidence); *Martinez v. State*, No. 04-14-00652-CR, 2015 WL 6736781, at *5 (Tex. App.—San Antonio Nov. 4, 2015, pet. ref'd) (mem. op., not designated for publication) (testimony regarding pornographic materials prior to the admission of the pornographic materials). This factor is therefore neutral.

The third factor focuses on "how much trial time was dedicated to the development of the evidence such that its introduction caused undue delay." *Hart*, 688 S.W.3d at 893 (citing *Montgomery*, 810 S.W.2d at 389–90). For this factor, we consider the time needed to introduce the evidence, and associated testimony "regarding the evidence, including cross-examination, redirect examination, and any rebuttal offered by the defense in response to the evidence." *Id.* While the video was nearly an hour long and much of Deputy Lujan's testimony concerned its contents, by the time Appellant raised an objection that corresponds with his complaint on appeal, the State's questioning of Deputy Lujan was at its conclusion, and only one page of trial testimony remained. Appellant's references to the objected-to exhibit were then limited to questioning Deputy Lujan regarding her observations of A.M.'s reported injuries. The recording, however, was raised repeatedly throughout the State's closing argument. *See Inthalangsy v. State*, 634 S.W.3d 749, 759 (Tex. Crim. App. 2021) (reviewing the transcript of the State's closing argument in its Rule 403 analysis); *Price v. State*, No. 11-22-00195-CR, 2023 WL 6627127, at *5 (Tex. App.—Eastland Oct. 12, 2023, pet. ref'd) (mem. op., not designated for publication) (same). Balancing these considerations, this Rule 403 factor weighs against admission of the recording.

In reviewing a trial court's determination under Rule 403, a reviewing court is to reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *See Espinoza*, 2022 WL 3903774, at *8 (quoting *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999)). It is only when there is a "clear disparity"

14

between the prejudice and the probative value of the offered evidence that Rule 403 envisions exclusion. *Boykin v. State*, No. 11-22-00126-CR, 2023 WL 5280804, at *8 (Tex. App.—Eastland Aug. 17, 2023, no pet.) (mem. op., not designated for publication) (quoting *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009)). Cumulatively, no clear disparity exists here. Thus, in balancing the applicable factors, the trial court did not abuse its discretion in admitting the evidence. We overrule Appellant's third issue.

## V. *The State's Closing Argument*

In his fourth issue, Appellant argues that the State's "unobjected-to punishment phase argument predicting future brutality constituted fundamental error that denied [him] a fair sentencing[.]"

Permissible jury argument generally falls into one of four categories: (1) summation of the evidence; (2) reasonable deduction of the evidence; (3) answer to opposing counsel's argument; and (4) a plea for law enforcement. *Davis v. State*, 329 S.W.3d 798, 821 (Tex. Crim. App. 2010) (citing *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000)). Even if an argument is improper, reversal is only necessary if the statements deprived Appellant of a fair and impartial trial. *Herrera v. State*, 676 S.W.3d 896, 906 (Tex. App.—Eastland 2023, no pet.) However, this court has previously held—and the Court of Criminal Appeals recently reaffirmed—that the right not to be subjected to improper jury argument is forfeitable by inaction. *Id.* (first citing *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); then citing *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); and then citing *Kennedy v. State*, 255 S.W.3d 684, 690 (Tex. App.—Eastland 2008, no pet.)); *see Irsan*, 708 S.W.3d at 604.

Following Appellant's closing argument, wherein he asked the jury to show him mercy in consideration "that he [went] to second base with someone he thought was 17," the State argued in relevant part:

15

The defense asked for mercy. Mercy for who? Mercy for him? What about mercy for [A.M.]? What about mercy for the other girls who are on our streets? What's mercy for them?

Something to ask yourself when you're considering how to punish [Appellant], when you're out and you're going to dinner at Chili's, when do you want to turn around and see that there is [Appellant], your waiter? When you're going to H-E-B and you're picking up groceries, when do you want to see him picking up groceries too while you might be there with your kids or just by yourself?

When do you want to see him at another quinceanera with young girls when he's horny again? When do you want to see another screaming girl? When would you like to explain to that next screaming girl what your punishment was and why it was that low? What message do you want to send to our community and to all those other girls? How safe do you want them to be?

His actions deserve a stiffer sentence, please give it to him.

Appellant did not object to the State's closing argument. The State's argument could reasonably have been interpreted by the trial court to be permissible pleas for law enforcement. Further, on its face they also appear to have been invited with the State answering Appellant's trial counsel's arguments. In any event, the State argues on appeal that Appellant's challenge to the State's closing argument was not preserved, and we agree.

"[A] defendant's failure to object to a jury argument or a defendant's failure to pursue to an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal." *Cockrell*, 933 S.W.2d at 89; *Mendoza v. State*, No. 11-23-00123-CR, 2024 WL 3528561, at *4 (Tex. App.—Eastland July 25, 2024, pet. ref'd) (mem. op., not designated for publication) ("Even an inflammatory jury argument is forfeited if the defendant does not pursue his objection to an adverse ruling." (quoting *Hernandez v. State*, 538 S.W.3d 619, 622 (Tex. Crim. App. 2018))). Having failed to object, Appellant has waived his right to complain about

16

the State's closing argument and has not preserved this issue for our review. *See Cockrell*, 933 S.W.2d at 89; *see, e.g.*, *Compton v. State*, 666 S.W.3d 685, 727–30 (Tex. Crim. App. 2023) (concluding that by failing to object at trial, the appellant procedurally defaulted his claims that the State's jury arguments violated his constitutional rights to equal protection and due process, the Eighth Amendment, the constitutional prohibition on prosecutorial misconduct, and Article 37.071, Section 2(a)(2)). We overrule Appellant's fourth issue.

## VI. *This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS

JUSTICE


May 14, 2026

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

17